UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SUSAN M. GRIFFIN,

                               Plaintiff,

         v.                                    5:04-CV-1203
                                              (J. Mordue)

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

_____

APPEARANCES:                  OF COUNSEL:

LEGAL SERVICES OF CENTRAL     CHRISTOPHER CADIN, ESQ.
  NEW YORK - SYRACUSE
Attorneys for Plaintiff

GLENN T. SUDDABY           WILLIAM H. PEASE
United States Attorney for the     Assistant U.S. Attorney
  Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable

Norman A. Mordue, United States District Judge,  pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed applications for both disability insurance benefits and

Supplemental Security Income benefits (SSI) on May 6, 2002 (Administrative

Transcript ("T") at 41).  The applications were denied initially on July 9, 2002.  (T. 34).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on August 23, 2003.  (T. 149).  The ALJ found that plaintiff was not disabled.  (T. 27).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 19, 2004. (T. 4-6).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The Commissioner's Residual Functional Capacity finding is not supported by substantial evidence in the record. (Brief, p. 10).

(2) The ALJ failed to affirmatively develop the record and therefore, the Residual Functional Capacity finding is erroneous. (Brief, p. 14).

(3) The ALJ erred in finding the plaintiff's claims to be overstated and in finding plaintiff not fully credible. (Brief, p. 16).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## FACTS

This court adopts the facts contained in the plaintiff's brief under the heading "Statement of Facts" beginning on page 1 and ending on page 3 to the extent that plaintiff's recitation is consistent with this Report-Recommendation.

2

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... .  Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the

[Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

**1.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

2.    **Medical Evidence**

During November of 2001, while plaintiff was working as a packer in a factory (T. 153), she experienced severe back pain and in her words could hardly "stand or barely lift the cases". (T. 154). Plaintiff visited the emergency room at Cortland Memorial Hospital and thereafter went to her primary care physician, Dr. Robert Castellanos. (T. 154). Dr. Castellanos prescribed medication (T. 89), and x-rays showed an increased lumbosacral angle with mild retrolisthesis at Level L5-S1 of her spine. (T. 89, 105, 124). Dr. Castellanos continued treating plaintiff's back pain and observed tenderness and muscle spasm during his examinations. (T. 87-89).

Although an MRI during February of 2002 showed posterior bulging of the L5-S1 disc with a small protrusion or herniation (T. 99), a CT scan of plaintiff's lumbar spine one year later in March of 2003 showed no disc herniation, no canal stenosis, no bony infiltrative or destructive changes, and no significant epidural abnormality. (T.

120).  The impression of the physician reading the CAT scan was that there was "no herniation, canal or foraminal stenosis".  (T. 120).  At the same time, on March 21, 2003, a myelogram was performed on plaintiff's lumbar spine.  The physician interpreting the myelogram reported that the vertebral bodies had normal density, morphology, and alignment, there were no intrathecal masses, and no significant epidural mass effects.  The impression was stated as "this study does not demonstrate any significant findings".  (T. 121).

Plaintiff continued to experience pain and Dr. Castellanos treated plaintiff.  Dr. Castellanos reported finding muscle spasms and tenderness. (T. 88).  During January of 2002, plaintiff visited Dr. Donna Lieberman, a chiropractor.  Dr. Lieberman treated plaintiff on several occasions during January and February of 2002, but plaintiff reported that the chiropractic treatment did not help.  (T. 106).

Dr. Castellanos referred plaintiff to a neurosurgeon, Dr. Saeed Bajwa. (T. 87).  Dr. Bajwa examined plaintiff during March of 2002. (T. 102-104).  Dr. Bajwa continued to treat plaintiff and diagnosed plaintiff as having lower back pain with L5-S1 radiculitis and a bulging disc at L5-S1. (T. 103).  Dr. Bajwa prescribed different medications for plaintiff's pain and also prescribed a lumbosacral brace (T. 104) which plaintiff utilized for several years. (T. 72, 101, 118, 158).  Dr. Bajwa also prescribed anti-inflammatory medications such as Celebrex and Naprosyn. (T. 103, 101).

Because plaintiff continued to report pain, Dr. Bajwa tried injections known as epidural pain blocks. (T. 101, 116).  During April of 2002, Dr. Bajwa reported that

plaintiff was "100% disabled from work until [she is] reevaluated 8/12/02." (T. 100). Dr. Bajwa did not believe that surgery would help plaintiff's condition, which he stated as degenerative disc disease with severe lower back pain and radiculitis. (T. 119). Dr. Bajwa referred plaintiff to Dr. Kevin Hastings for specialized pain relief management. (T. 119).

During June of 2003, plaintiff attended the Osteopathic Pain Clinic, and later during October of 2003, attended another pain clinic known as the "Center for Pain Relief". (T. 136). Plaintiff received joint injections and steroid injections at these clinics. (T. 138-46).

During May of 2004, Dr. Castellanos, plaintiff's primary care physician, rendered the opinion that plaintiff was totally and permanently disabled because of her degenerative disc disease. (T. 148). The "Medical Evaluation Regarding Employability" completed by Dr. Castellanos on May 10, 2004 is slightly inconsistent since it shows that plaintiff is temporarily unemployable for a period of six to twelve months and that plaintiff should be re-evaluated during September of 2004, yet it also states that the plaintiff is totally and permanently disabled and "***not expected to become employable***." (T. 148)(emphasis added). Dr. Castellanos also checked several restrictions on plaintiff's activities including walking, standing, sitting, pulling, pushing, climbing, carrying, bending, and lifting. (T. 148).

### 3. Residual Functional Capacity (RFC)

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545; 416.945. *See also Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*, 737 F. Supp. at 183.   Furthermore, an ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

The ALJ concluded that plaintiff has the residual functional capacity to "lift and carry up to 10 pounds, sit for 6-8 hours in an 8-hour work day and perform tasks not requiring more than occasional walking or standing."  (T. 25).  The ALJ states on page 5 of his decision (T. 26) that he considered an RFC assessment prepared by a state agency consultant but was not giving any specific weight to the assessment because "it is unclear who signed it". (T. 26).  The ALJ states that there is no indication whether the signature is from a physician, medical expert, or non-medical individual. (T. 26).

Although the ALJ does not give any "specific weight" to this RFC evaluation, (T. 108-114), he finds that plaintiff can perform sedentary work, which involves sitting for 6 to 8 hours in a work day and lifting and carrying up to 10 pounds.  The RFC assessment that the ALJ states he is not using was the only assessment indicating that the plaintiff could sit for this lengthy period of time.  Therefore, it is unclear how the ALJ determined that plaintiff could perform the specific functions of sedentary work.  There is ***no other support*** in the record for the ALJ's RFC finding.

8

The ALJ's RFC finding is not supported by substantial evidence in the record since it is not supported by *any* of the opinions of plaintiff's treating primary care physician (Dr. Castellanos), plaintiff's neurologist, Dr. Saeed Bajwa, or other physicians who treated plaintiff at pain management clinics (T. 128-135 - Dr. Kevin Hastings, D.O.; T. 136-148 - Dr. Kanas).

Because it is unclear how the ALJ made his determination that plaintiff could perform these functions, the ALJ's finding of plaintiff's Residual Functional Capacity is ***not*** supported by substantial evidence in the record and the case must be remanded for further proceedings on this issue.

## 4.    **Pain and Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)(quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged...." 20 C.F.R. §§ 404.1529(a), 416.929(a).

Second, if the medical evidence alone establishes the existence of such impairments,

then the ALJ need only evaluate the intensity, persistence, and limiting effects of a

claimant's symptoms to determine the extent to which it limits the claimant's capacity

to work. *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity,

persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the

credibility of the claimant's subjective complaints by considering the record in light of

the following symptom-related factors: (1) claimant's daily activities; (2) location,

duration, frequency, and intensity of claimant's symptoms; (3) precipitating and

aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication

taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any

measures taken by the claimant to relieve symptoms; and (7) any other factors

concerning claimant's functional limitations and restrictions due to symptoms. *Id.*

§§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff in this case argues that in rejecting her complaints of pain, the ALJ

focused on plaintiff's statements during her January 2002 examination and treatment

when her condition was not as severe and painful as during 2003 and 2004. (Brief, p.

17).  Plaintiff's arguments are supported by the record since the record does show that

plaintiff received increasing medical care during 2003 and 2004 in attending pain

management clinics and utilizing pain and other medications.  The record shows that

plaintiff's physicians commented on her worsening condition.  (T. 116).

Although the record does show some inconsistent statements by plaintiff about her ability to walk and sit, the inconsistencies are mainly due to the time that plaintiff made the statements.  During 2002, plaintiff appeared to be able to walk for greater distances and lift greater weight than in 2003 and 2004.  The ALJ's conclusions therefore are not supported by substantial evidence in the record insofar as he did ***not*** take into account plaintiff's condition during 2003 and 2004.

## 5.   **Develop the Record**

It is well-settled that the ALJ has the duty to develop the record even when the plaintiff is represented by counsel. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). This duty arises from the Commissioner's regulatory obligation to develop a complete medical record prior to making a disability determination[1] and is particularly important in a case where plaintiff is unrepresented by counsel at the time of the administrative proceedings. *See Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)(where plaintiff is pro se, ALJ is under a heightened duty to probe into and explore all the relevant facts).

Plaintiff in this case was represented by counsel at the ALJ hearing, however, plaintiff argues that the ALJ did not affirmatively obtain additional information from plaintiff's treating sources since plaintiff's treating sources did not find positive straight leg raising tests in two positions (supine and sitting). (T. 25).  The court would first point out that the ALJ's discussion of the straight leg raising test was included in the discussion of whether plaintiff met a ***listed impairment***.  In order to

---

[1]  20 C.F. R. § 404.1512(d)-(f), 416.912(d)-(f).

meet a listed impairment, plaintiff would have to be unable to ambulate effectively under section 1.00(B)(2)(b)[2], and under section 1.04(A) would have to have had positive straight leg raising test both sitting and supine. 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 1.00(B)(2)(b) & 1.04(A). Since plaintiff did not have the positive straight leg raising test both standing and supine, and plaintiff can ambulate effectively, the ALJ was correct in determining that plaintiff did not have a listed impairment.

This court has already found that the ALJ's determination of RFC is unsupported by substantial evidence, and that the case must be remanded to make a proper determination of RFC. In making this new determination, the ALJ may re-contact the treating physicians for a more definite statement regarding plaintiff's ability to perform the functions of sedentary work. The fact that the treating physicians determined that plaintiff was to be "off work" or "totally disabled" without some additional information, is also not necessarily a determination of a specific inability to perform the requirements of a particular exertional category of work.

The definition of sedentary work is a legal definition, and it is not always clear that a physician, or any individual who states that a patient is "totally disabled" knows the Social Security requirement for total disability, based upon age, education, and prior work experience. In fact, the court notes that plaintiff's most recent job required her to lift up to *50 pounds*. Clearly, plaintiff was disabled from that job. Thus, additional information is required to make the appropriate determination.

---

[2] The definition of inability to ambulate effectively generally requires that plaintiff must need an assistive device in order to walk. 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1). There is no indication that this plaintiff requires an assistive device in order to walk.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED,** that this matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 14, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

13